DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

VICTOR BELIZAIRE and MARY J. HARRIS-    )
BELIZAIRE,                              )
                                        )
                 Plaintiffs,            )
                                        )        Civil No. 2013-66
            v.                          )
                                        )
WHITECAP INVESTMENT CORP., d/b/a        )
PARADISE LUMBER; PUTNAM LUMBER &        )
EXPORT CO.; PUTNAM FAMILY PROPERTIES,   )
INC.; GREAT SOUTHERN WOOD PRESERVING,   )
INC.; and MSI BUILDING SUPPLIES,        )
                                        )
                 Defendants.            )
_____ )
WHITECAP INVESTMENT CORP., d/b/a        )
PARADISE LUMBER,                        )
                                        )
                 Cross-claimant,        )
                                        )
            v.                          )
                                        )
PUTNAM LUMBER & EXPORT CO.; PUTNAM      )
FAMILY PROPERTIES, INC.; and GREAT      )
SOUTHERN WOOD PRESERVING, INC.          )
                                        )
                 Cross-claim defendants.)
_____ )
MSI BUILDING SUPPLIES,                  )
                                        )
                 Cross-claimant,        )
                                        )
            v.                          )
                                        )
PUTNAM FAMILY PROPERTIES, INC.; PUTNAM  )
LUMBER & EXPORT CO.; and GREAT          )
SOUTHERN WOOD PRESERVING, INC.,         )
                                        )
                 Cross-claim defendants.)

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 2

**ATTORNEYS:**

**Paul Martin Platte, Esq.**
Columbia, SC
    *For the Plaintiffs,*

**Chad C. Messier, Esq.**
**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
    *For the defendants/cross-claimants Whitecap Investment*
    *Corp. d/b/a Paradise Lumber and MSI Building Supplies,*

**Putnam Lumber & Export Co.**
    *Unrepresented entity,*

**Putnam Family Properties, Inc.**
    *Unrepresented entity,*

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
    *For the defendant/cross-claim defendant Great Southern Wood*
    *Preserving, Inc.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

    Before the Court are the motions of the defendant/cross-claim defendant Great Southern Wood Preserving ("GSWP") to dismiss all claims and cross-claims asserted against it for want of personal jurisdiction.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

    GSWP is an Alabama lumber wholesaler. It operates principally in Alabama. In addition to selling wood directly, it also provides chemical and pressure treatments to prevent lumber

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 3

from decaying. The ostensible purpose of such treatments is to render the lumber safe for use in buildings.

From in or about 2003 until in or about 2009, GSWP regularly sold treated lumber and provided lumber-treatment services to the defendant/cross-claimant Putnam Family Properties, Inc., doing business as Putnam Lumber and Export Company ("Putnam Lumber"). Putnam Lumber, a Florida corporation, is itself a lumber retailer. Putnam Lumber regularly sold lumber to, among others, the defendant/cross-claimant Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had purchased from Putnam Lumber, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Two of these consumers are the plaintiffs in the instant case, Victor Belizaire and Mary J. Harris-Belizaire (collectively the "Belizaires").

The Belizaires allege that the GSWP-treated lumber prematurely decayed, causing damage to structures into which the lumber had been incorporated.

After receiving complaints from consumers like the Belizaires about the GSWP-treated lumber, on December 29, 2010,

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 4

Paradise Lumber initiated an action against, among others, GSWP in this court. That action is captioned *Whitecap Investment Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (the "Paradise Lumber Case").

The Belizaires initiated this matter on May 28, 2013, in the Superior Court of the Virgin Islands.  The complaint named GSWP, Paradise Lumber, Putnam Lumber, and MSI Building Supplies ("MSI") as defendants. Thereafter, on July 5, 2013, Paradise Lumber removed the matter to this Court.

On July 30, 2013, Paradise Lumber filed its answer and cross-claims against GSWP and Putnam Lumber.  MSI followed suit, filing its answer and cross-claims against GSWP and Putnam Lumber, on August 2, 2013.

On August 29, 2013, GSWP moved to dismiss both the complaint and Paradise Lumber's cross-claims on the grounds that this Court lacks personal jurisdiction over GSWP.[1]  GSWP filed another iteration of its motions to dismiss the complaint and Paradise Lumber's cross-claims on August 30, 2013.  On August 30, 2013, GSWP also moved to dismiss MSI's cross-claims.

---

[1] GSWP's August 29, 2013, Motion as to Paradise Lumber is for some reason titled "Motion to Dismiss for Lack of Prosecution." It is in fact a motion to dismiss for lack of personal jurisdiction. (ECF No. 11.)

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 5

All of GSWP's motions to dismiss are premised on the argument that the Court lacks personal jurisdiction over GSWP. As such, all are addressed in this memorandum opinion.

## II.  DISCUSSION

### A.   Factual Challenge

Once challenged, "'[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A challenge to a court's exercise of personal jurisdiction may be either facial or factual. In a facial challenge, a court must take all allegations in the complaint as true and the plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Land Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

However, if the challenge arises after the allegations in the complaint have been controverted, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 62 (3d Cir. 1984)). The plaintiff may discharge this burden by producing "affidavits or other competent evidence that [show

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 6

that] jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

**B.  Statutory and Due Process Considerations**

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor*, 496 F.3d at 316; *see also* Fed. R. Civ. P. 4(k)(1)(A).

If the exercise of personal jurisdiction comports with local law, a court must next ask whether, under the Due Process Clause of the United States Constitution, the defendant has "certain minimum contacts with . . . [the forum state or territory] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal jurisdiction: general and specific. *See O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v.*

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 7

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

"Specific jurisdiction exists if the defendant has

' "purposefully directed" his activities at residents of the

forum and the litigation results from alleged injuries that

"arise out of or relate to" those activities.' " *Metcalfe*, 566

F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)).

" 'If the defendant "maintain[s] continuous and substantial

forum affiliations," then general jurisdiction exists. If the

defendant's contacts fall short of that standard, then at least

one contact must give rise or relate to the plaintiff's

claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d

at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink

Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration

original)).

### III. <u>ANALYSIS</u>

### A. <u>Virgin Islands Long-Arm Statute</u>

"A district court sitting in diversity may assert personal

jurisdiction over a nonresident defendant to the extent allowed

under the law of the forum state." *Metcalfe v. Renaissance

Marine, Inc.*, 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir.

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 8

2009)(citing *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735

f.2d 61, 63 (3d Cir. 1984)); *see also* Fed. R. Civ. P.

4(k)(1)(A). In the Virgin Islands, establishing personal

jurisdiction requires a "two-part analysis." *Metcalfe*, 566 F.3d

at 330. "First, there must be a statutory basis for exercising

jurisdiction over the nonresident defendant in accordance with

the Virgin Islands Long-Arm Statute, V.I. CODE ANN. tit. 5,

§ 4903." *Id.* "[S]econd, the nonresident defendant must have

minimum contacts with the Virgin Islands sufficient to satisfy

constitutional due process." *Id.* (citing *Kelvin Manbodh Asbestos*

*Litig. Series*, 47 V.I. 267, 279 (Super. Ct. 2005) ("[T]he

Court's *in personam* jurisdiction is limited first by the terms

of the [long-arm] statute and then by the Due Process Clause of

the Fourteenth Amendment of the Constitution."); *Godfrey v.*

*Int'l Moving Consultants, Inc.*, 18 V.I. 60, 66 (D.V.I. 1980)

("The proper method of testing jurisdiction over a nonresident

defendant is to first determine whether the long-arm statute

authorizes the Court to exercise its adjudicatory powers, and

then, secondly, to decide if such an exercise is

constitutionally permissible.")

    The Virgin Islands Long-Arm Statute provides, in pertinent

part, that

        A court may exercise personal jurisdiction
        over a person, who acts directly or by an

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 9

> agent, as to a claim for relief arising from
> the person's
>
> (1) transacting any business in this
>     territory;
> (2) contracting to supply services or
>     things in this territory;
> (3) causing tortious injury by an act or
>     omission in this territory;
> (4) causing tortious injury in this
>     territory by an act or omission outside
>     this territory if he regularly does or
>     solicits business, or engages in any
>     other persistent course of conduct, or
>     derives substantial revenue from goods
>     used or consumed or services rendered,
>     in this territory;

V.I. Code Ann. tit. 5, § 4903(a) ("Section 4903(a)").

To evaluate whether there is personal jurisdiction under

the Virgin Islands Long-Arm Statute, the Court must "determine

(1) whether the defendant's contacts meet one of the categories

under section 4903(a) and then (2) whether the plaintiff's claim

'arises from' that contact." *Molloy v. Indep. Blue Cross*, 56

V.I. 155 (S. Ct. 2012). Here, there is no dispute that GSWP's

putative contacts with the Virgin Islands are also what give

rise to the present action--namely, the treating of lumber

destined for the Virgin Islands and the selling of treated

lumber. Thus, the Court's analysis will focus on determining

whether GSWP's conduct "caus[ed] tortious injury in this

territory by an act or omission outside this territory if he

regularly does or solicits business, or engages in any other

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 10

persistent course of conduct, or derive[d] substantial revenue
from goods used or consumed or services rendered, in this
territory." V.I. CODE ANN. tit. 5, § 4903(a)(4).

Section 4903(a)(4), requires a two part showing: first,
that the defendant committed a tort outside the Virgin Islands
causing an injury in the Virgin Islands; and, second, "the
existence of additional unrelated forum contacts" by showing,
through one or more of the following that the defendant has
(1)regularly done business with or solicited business from the
Virgin Islands, (2) engaged in any other persistent course of
conduct in the territory, or (3) derived substantial revenue
from goods or services consumed in the Virgin Islands. *Molloy v.
Independence Blue Cross*, Civ. No. 2009-0102, 2010 WL 78942, *11,
56 V.I. 155 (V.I. 2012). "A court may consider each of these
factors individually, or all three cumulatively, for the
purposes of satisfying this step of the analysis." *Id.* (citing
*Hedrickson v. Reg O Co.*, 17 V.I. 457, 463 (D.V.I. 1980)).

"[T]he test of substantiality does not depend upon a
comparison with the defendant's total sales. . . . The
substantiality of the revenues must be measured by objective
factors, not the size of the defendant." *Hendrickson v. Reg O
Co.*, 657 F.2d 9, 12-13 (3d Cir. 1981). Even annual direct sales
averaging $1,800 have been found to be "substantial" for

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 11

purposes of finding personal jurisdiction under Section 4903(a).
*Id.*

Taking all allegations in the complaint as true, the Belizaires have alleged that GSWP sold wood to Putnam Lumber, which then was bought by the Belizaires, which was not treated as marked and promoted.  The Belizaires have also alleged that as a result there was significant damage to the structures in which the wood was incorporated.  As such, they have sufficiently alleged that a tortious act occurred.

GSWP asserts that it has not derived substantial revenue from goods used or services consumed in this territory. Paradise Lumber, in response, directs the Court to Putnam Lumber's responses to interrogatories, which state that GSWP received over $2,000,000 in revenue from lumber sales to Putnam Lumber. (Paradise Exhibit F.) Out of these total sales, GSWP received $432,884.72 for lumber or the treatment of lumber which was sold in the Virgin Islands. (*Id.*) This amount of revenue certainly qualifies as "substantial." *See Metcalfe* 566 F.3d at 332 (finding the receipt of $85,000 in revenue to be "substantial").

Even if Section 4309(a)(4) did not apply, the claims may still fall within another subsection of Section 4309(a), such as Section 4309(a)(1).

Belizaire et al. v. Whitecap Inv. Corp. et al.
Civil No. 2013-66
Memorandum Opinion
Page 12

"Under subsection (a)(1), the term 'transacting any business' can be satisfied by only a single act which in fact amounts to the transaction of business within the state or territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp.2d 561, 567 (D.V.I. 2003) (finding it sufficient under subsection (a)(1) that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act." *Manbodh Asbestos Litig.*, 47 V.I. at 283; *see also Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in some business activity in the Virgin Islands coupled with the receipt of substantial revenue from the activity sufficient to establish the application of subsection (a)(1) of the long-arm statute).

In *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009), Richard and Cynthia Metcalfe (collectively, the "Metcalfes") residents of the Virgin Islands, purchased a boat from Renaissance Marine, Inc. ("Renaissance"), a company based in Florida. The Metcalfes claimed that Renaissance breached the contract of sale, and brought suit in this Court. Renaissance sought to dismiss the action, claiming lack of personal

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 13

jurisdiction. In response, the Metcalfes asserted that they
"exchanged phone calls, faxes, and emails with Renaissance while
they were in the Virgin Islands during the process of
negotiating the sale of the [boat]." *Id.* at 332. The Third
Circuit held that, "[b]ecause one single act can constitute
'transacting business,' surely repeated reciprocal
communications between a buyer in the Virgin Islands and a
seller located elsewhere which culminate in an agreement for
sale of an item at a cost of nearly $85,000 also satisfies the
standard under subsection (a)(1)." *Id.*

Similarly, in *Molloy*, Gary and Christa Molloy
(collectively, the "Molloys"), residents of the Virgin Islands,
brought suit against Blue Cross Blue Shield Association
("BCBSA") in the Superior Court of the Virgin Islands. The
gravamen of their complaint was that BCBSA was liable for
failing to provide timely air evacuation services when their
infant son suffered complications caused by his premature birth.
Significantly, the Molloys had no relationship with BCBSA.
Rather, they had entered into a health-insurance agreement with
Blue Cross Blue Shield of the Virgin Islands ("BCBSVI"), an
independent company that had licensed the "Blue Cross Blue
Shield" brand name from BCBSA. Despite this, the Supreme Court
of the Virgin Islands held that BCBSA had transacted business in

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 14

the Virgin Islands within the meaning of Section 4903(a)(1). The

court noted that BCBSA had lobbied Congress in order to secure

contracts for BCBSVI to provide insurance to federal employees

in the Virgin Islands. The court further noted that BCBSA

received substantial income from BCBSVI's licensing fees, a

portion of which were derived from revenue produced by the

contracts with federal employees. The Court found that "Acting

as an agent for an insurance company in the Virgin Islands . . .

with the specific purpose of garnering contracts to cover Virgin

Islands citizens qualifies as more than an inconsequential act,

and indicates BCBSA's intent to transact business within the

Virgin Islands." *Id.* at 176.[2]

Here, GSWP argues that it does not and has not transacted

any business in the Virgin Islands. In support of this

contention, it avers that GSWP has not ever marketed,

---

[2] The Virgin Islands Supreme Court ultimately concluded that, although
BCBSA's contacts with the Territory indicated an intent to transact business
therein, the plaintiff's claims did not "arise from" those contacts. This was
so because BCBSA's contacts were not a "but-for" cause of the Molloys claims.
Indeed, the Molloys could very well have sustained the same injuries if BCBSA
had engaged in no lobbying on behalf of BCBSVI or received no revenue from
its licensing arrangement.

As noted above, the gravamen of Paradise Lumber's complaint is that
GSWP failed to properly treat certain lumber which was ultimately sold to
Paradise Lumber. If none of GSWP's lumber wound up in the Virgin Islands,
there would be no basis for Paradise Lumber's claims against GSWP.  Thus,
unlike in the Molloys' case, the conduct, if it rose to the level of a
transaction, would be a but-for cause of the claims.

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 15

distributed, or sold treated wood products in the United States Virgin Islands.

As discussed above, GSWP received over $2,000,000 in revenue from lumber sales to Putnam Lumber. Out of these total sales, GSWP received $432,884.72 for lumber or the treatment of lumber which was sold in the Virgin Islands. This amount of revenue certainly qualifies as "substantial." *See Metcalfe* 566 F.3d at 332 (finding the receipt of $85,000 in revenue to be "substantial").

What is less clear is whether GSWP engaged in any business activity in the Virgin Islands to receive this substantial revenue. Michael Simerly ("Simerly"), GSWP's corporate representative, admits that in or about 2008, he became aware that Virgin-Islands customers of Putnam Lumber were complaining about the quality of GSWP's lumber. (Tr. of Dep. of Simerly 36:25–37:17.) On July 22, 2008, Simerly sent an email to Michael Noble ("Noble"), an employee of Putnam Lumber, in which he stated: "[A]ny material that goes over seas [*sic*] does not carry a warranty, BUT we can help you out some with this issue. How many pieces is your customer talking about?" (Pls.' Ex. 22) Noble replied:

> I'm not sure that the U.S. Virgin Islands is considered overseas. are [*sic*] you saying that the .15 treatment we bought on 5/4" decking which is approved in the United

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 16

> States is not covered in the United States
> Virgin Islands? would [*sic*] there be any
> reason it would disintegrate there and not
> here? Per our conversation, every piece of
> 5/4x6/16' RED treated was purchased from
> Great Southern and sold to our only client
> in St. John, U.S.V.I.

(Pls.' Ex. 22.) On October 20, 2009, Simerly again emailed

Noble, asking, "Do you have any TSO items in the works coming to

Jesup or any stock items we can quote into Jax? Have you been

loading any flat racks out of Jax, or are the islands still

slow?" (Paradise Lumber's Ex. V.) Simerly has subsequently

stated that his reference to "islands" in this email "was just a

generic islands as far as the Caribbean." (Tr. of Dep. of

Simerly, 37:16-17.)

Confronted with the same evidence in the Paradise Lumber

Case, the Court drew the following conclusions:

> Th[e] evidence suggests that GSWP was aware
> Putnam Lumber did business in the Virgin
> Islands. Moreover, it appears that on at
> least one occasion GSWP sought to do
> business with Putnam Lumber specifically
> because Putnam Lumber sold lumber in the
> Virgin Islands.
>
> This case is thus at least one degree
> removed from *Metcalfe*. There, as here, the
> defendant, Renaissance, never set foot on
> Virgin Islands soil. However, Renaissance
> did engage in several direct communications
> with the plaintiffs, who at that time were
> located in the Virgin Islands. Here, by
> contrast, GSWP never dealt directly with a
> purchaser of its goods located in the Virgin
> Islands. It never sent any communications to

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 17

the Virgin Islands nor received any. Instead, it dealt entirely with an intermediary--Putnam Lumber--which was not itself located in the Virgin Islands. Moreover, unlike *Metcalfe*, there is no evidence GSWP was aware of the destination of the lumber prior to 2008, when it conducted the majority of its transactions with Putnam.

However, the mere fact that GSWP never did business directly with the plaintiffs is not dispositive. As the Supreme Court of the Virgin Islands has made clear, the determinative inquiry is whether the defendant's conduct evinced "an intent to transact business within the Virgin Islands." *Molloy*, 56 V.I. at 176. In that case, the defendant, BCBSA, did not directly engage in any business with any person in the Virgin Islands. Yet by acting as an agent for a Virgin Islands entity, and receiving substantial revenues from that entity, it was held to have transacted business.

Here, there is evidence that, at least by 2008, GSWP was aware that some portion of the lumber it provided to Putnam Lumber was being shipped to the Virgin Islands. At the same time, GSWP continued to provide lumber and lumber treatment services to Putnam Lumber up until 2009. Specifically, GSWP received $79,575.41 in revenue from lumber that was sold by Putnam in the Virgin Islands in 2008 and 2009. Indeed, the evidence suggests that, on prior occasions, Putnam Lumber specifically requested certain types of lumber from GSWP for resale to the Virgin Islands. It also appears that on at least one occasion, GSWP reached out to Putnam Lumber for the purpose of selling wood to the Virgin Islands, although the evidence as to this point is disputed.

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 18

> The preponderance of the admittedly limited
> evidence tends to show that GSWP provided
> lumber or the treatment of lumber to Putnam,
> with the knowledge that a portion of this
> lumber would be resold to the Virgin
> Islands. The evidence further shows that
> GSWP was aware of the destination of this
> lumber prior to at least some of the sales
> it made in 2008 and 2009. Although GSWP did
> not deal directly with a Virgin Islands
> citizen or entity, its position is
> nonetheless similar to that of BCBSA in the
> *Molloy* case. GSWP, like BCBSA, engaged in
> conduct that it knew would bring about
> substantial revenue from the Virgin Islands.
> Indeed, the evidence suggests that GSWP was
> specifically informed by Putnam Lumber that
> certain shipments of lumber would ultimately
> be resold to the Virgin Islands.
>
> Moreover, as in *Metcalfe*, there is some
> evidence--albeit disputed--that GSWP
> warranted that its lumber would be free of
> defects. This further supports the inference
> that, particularly after it became aware of
> the ultimate destination of the lumber, that
> GSWP intended to have a relationship with
> residents of the Virgin Islands.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No.
2010-139 (CVG), at *25-25 (D.V.I. Mar. 21, 2013) (slip op.)
(internal citations to the record omitted). The Court thus
concluded that GSWP had transacted business within the meaning
of Section 4903(a).

The present case concerns the same party--GSWP--and the
same underlying transactions. The Court thus sees no reason to
deviate from its decision in the Paradise Lumber Case.

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 19

Accordingly, the Court finds that the Virgin Islands Long-Arm Statute would apply to GSWP.

**C.    Due Process**

Even if the Virgin Islands Long-Arm Statute applies, the Court must inquire as to whether Due Process would preclude this Court from exercising personal jurisdiction over GSWP.

In order for the assertion of personal jurisdiction to comport with Due Process, as a threshold matter, the defendant must have taken "action . . . purposefully directed toward the forum State." *Pinker*, 292 F.3d at 370 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334. "If the defendant maintain[s] continuous and substantial forum affiliations," then general jurisdiction exists." *O'Connor*, 496 F.3d at 321 (internal citation and quotation marks omitted.)

In *Metcalfe*, the defendant, Renaissance, "sold at least four powerboats to a Virgin Islands rental company and advertised on its website that its boats could be rented from this local company . . . ." 566 F.3d at 335. Renaissance also sold at least seven powerboats to other Virgin Islands

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 20

residents. Renaissance sold all its boats with a ten-year
warranty, thus "obligat[ing] itself to its customers in the
Virgin Islands for many years to come." The Third Circuit found
that "Renaissance's sales and advertising demonstrate a pattern
of contacts with the Virgin Islands and, when coupled with the
ten-year warranty . . . tend to suggest ongoing business
relationships between Renaissance and Virgin Islands residents."
*Id.* Viewing these contacts cumulatively, the Third Circuit found
that there was a sufficient basis for the exercise of general
jurisdiction over Renaissance.

Here, for the better part of a decade, GSWP sold hundreds
of thousands of dollars of lumber to Putnam Lumber. As discussed
above, the evidence shows that GSWP continued to do this for at
least a year after learning that Putnam Lumber was selling this
lumber in the Virgin Islands. Moreover, on one occasion, GSWP
sold lumber directly to MSI, a Virgin Islands corporation.
*Stewart v. Whitecap Investment Corp.*, Civ. No. 2012-28 (CVG),
2013 WL 1163510, at *6 (D.V.I. March 21, 2013)(slip op.).
Further, as in *Renaissance*, GSWP warranted that its lumber would
be free from rot or other decay for some period of time,
although whether or not this warranty was applicable in the
Virgin Islands is disputed. *Id.*

Belizaire et al. v. Whitecap Inv. Corp. et al.
Civil No. 2013-66
Memorandum Opinion
Page 21

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court addressed when a defendant could be subjected to personal jurisdiction for merely placing a good in the stream of commerce. In that case, the defendants sold an automobile to the plaintiffs in New York. A year later, the plaintiffs were involved in an accident in Oklahoma. They sought to assert product-liability claims against the defendants in Oklahoma state court. The Supreme Court found no purposeful contact by the defendants with Oklahoma, and thus no basis for exercising personal jurisdiction over them. However, the Supreme Court was careful to note that "if the sale of a product or manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject them to suit." *Id.* at 297.

Precisely what is required to give rise to personal jurisdiction under the so-called "stream-of-commerce" theory is not entirely clear. In *Asahi Metal Industry Company, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987), the Supreme Court offered two different formulations. Justice O'Connor, writing for a plurality of four, concluded that placement of a product in the stream of commerce must be accompanied by some

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 22

"[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State." *Id.* at 112. Justice O'Connor provided the following examples of such conduct: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum state, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

Justice Brennan, writing for another plurality of four, disagreed that a finding of such "additional conduct" was necessary. Instead, he maintained that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117 (Brennan, J., concurring).

The Court of Appeals for the Third Circuit has not selected either of the two tests articulated in *Asahi Metal* as the preferred means of determining whether a defendant has made the minimum contacts necessary to support the exercise of personal jurisdiction. Instead, it encourages courts to consider both tests and then render a decision "based on the facts in the record." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205 (3d Cir. 1998).

Belizaire et al. v. Whitecap Inv. Corp. et al.
Civil No. 2013-66
Memorandum Opinion
Page 23

    In *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149
F.3d 197 (3d Cir. 1998), the plaintiff, Pennzoil Products Co.
("Pennzoil") sued the defendants in the Western District of
Pennsylvania. The defendants were Ohio corporations with their
principal place of business in Ohio. The defendants produced
solvents used to clean oil wells. The defendants sold these
solvents to oil producers in Ohio. Approximately sixty percent
of the oil produced by the Ohio oil producers was in turn sold
and shipped to Pennsylvania refineries. One of these refineries
was owned by Pennzoil. Pennzoil claimed that the solvents sold
by the defendants to the Ohio oil producers had caused damage to
its Pennsylvania refinery.

    To determine whether there was a basis for the exercise of
personal jurisdiction, the Third Circuit applied each of the two
tests from *Asahi Metal*. First, the court applied Justice
O'Connor's standard. It noted that in addition to putting their
chemicals in the stream of commerce, the defendants had sent
several samples to Pennzoil's laboratories in an effort to
resolve the issues the solvents were causing. The Court held
that this showed an intent to "design" a product for the
Pennsylvania refinery market. *Id*. at 206. The Court also noted
that a representative of the defendants had several telephone
conversations with lab personnel at Pennzoil's refinery to

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 24

discuss various ways to test the effects of the solvent. This, the court held, constituted the creation of "channels for providing regular advice to" Pennzoil's personnel in Pennsylvania. *Id.* Lastly, the Court noted that the defendants were motivated to engage in this additional conduct because they were aware that Pennzoil operated one of the largest refineries in Pennsylvania, which constituted sixty percent of the Ohio oil producers' customer base. The Court thus found a sufficient basis for the exercise of personal jurisdiction under Justice O'Connor's test.

The Court next considered the test propounded by Justice Brennan. The Court found abundant evidence that the defendants "placed goods[,] i.e., solvents[,] in the stream of commerce and benefited economically from the sale of the final product, i.e., crude oil, to refineries in the forum state." *Id.* at 207. The Court thus concluded that, under Justice Brennan's test, there were sufficient minimum contacts to warrant the exercise of personal jurisdiction.

Presented with the same evidence in the Paradise Lumber case, the Court drew the following conclusions:

> [T]he evidence is clear that GSWP placed goods in the stream of commerce--namely, lumber--and benefited economically from the sale of the lumber that ultimately was sent to the Virgin Islands. Moreover, it continued to do so after becoming aware, by

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 25

2008 at the latest, of the fact that this
lumber was being sold in the Virgin Islands.
There is also some evidence that this lumber
was protected by a warranty, which would
obligate GSWP to Virgin Islands residents
for some time after the sales. (*See* Paradise
Lumber's Ex. G.) Thus, under Justice
Brennan's test, GSWP has made sufficient
minimum contacts with the Virgin Islands to
be subject to personal jurisdiction in this
Court.

What is less clear is whether GSWP has
engaged in the type of "additional conduct"
contemplated by Justice O'Connor's test.
There is no evidence that GSWP "designed"
any product specifically with the Virgin
Islands market in mind, or that it
advertised its products or services in the
Virgin Islands. The evidence does show that,
on at least one occasion, GSWP offered to
provide advice to individuals in the Virgin
Islands who were complaining about the
quality of the lumber. This evidence tends
to suggest that there was a channel through
which GSWP offered to provide advice about
its products to end-users in the Virgin
Islands. It is not clear whether this
channel was used more than once. However,
the Court notes that GSWP was clearly
offering some degree of ongoing assistance
when its representative stated "we can help
you out some with this issue. How many
pieces is your customer talking about?"

Given that the evidence clearly establishes
minimum contacts under Justice Brennan's
test, and there is evidence of at least one
instance of additional conduct directed at
the Virgin Islands, the Court finds that
GSWP had the minimum contacts with the
Virgin Islands necessary for this Court to
exercise personal jurisdiction over it.

"After making a determination with regard to
minimum contacts, a court has the option of

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 26

evaluating whether exercising jurisdiction comports with notions of fair play and substantial justice." *Pennzoil Prods.*, 149 F.3d at 205 (internal quotation marks omitted). The factors courts are to consider in this inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 205-06. In *Pennzoil Products*, the Third Circuit noted in particular that there were "[n]o claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests . . . ." *Id.* at 208.

Likewise, in this case, GSWP has not made any claims that it would be unduly burdened by litigating in the Virgin Islands. The Virgin Islands would certainly have an interest in having these claims litigated here, as the injured parties are all Virgin Islands residents or corporations. Given that the alleged decay of the lumber occurred in the Virgin Islands, and damaged structures in the Virgin Islands, it would seem that this would also be the most convenient forum. As GSWP is not the only defendant in this action, dismissing GSWP from this case might force the parties in this case to proceed against GSWP in another forum while simultaneously litigating before this Court. This piecemeal litigation would assuredly be inefficient and a net drain on judicial resources. Lastly, GSWP has not adduced any "countervailing state interest," *id.*, that might be compromised by proceeding with this litigation in this Court.

*Belizaire et al. v. Whitecap Inv. Corp. et al.*
Civil No. 2013-66
Memorandum Opinion
Page 27

> The Court finds that the exercise of personal jurisdiction over GSWP would be in accord with "notions of fair play and substantial justice." *Id.* at 205.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (CVG), at *31-34 (D.V.I. Mar. 21, 2013) (slip op.) (internal citations to the record omitted).

As noted above, the instant motion concerns the same party--GSWP--and the same underlying transactions. The Court thus sees no reason to deviate from its reasoning in the Paradise Lumber Case. Accordingly, the Court finds that the exercise of personal jurisdiction over GSWP in the instant action comports with Due Process.

An appropriate order follows.

S_____

**Curtis V. Gómez**
**District Judge**